UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

LEONARD W. HUNT,                )
                                )
        *Plaintiff*[1]        )
                                )
v.                              )      No. 1:10-cv-199-JAW
                                )
MICHAEL J. ASTRUE,              )
Commissioner of Social Security, )
                                )
        *Defendant*           )

## REPORT AND RECOMMENDED DECISION[2]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the commissioner supportably found the plaintiff capable of returning to past relevant work as a service station attendant. I recommend that the decision of the commissioner be vacated and the case remanded for further development.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520, 416.920); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had a severe impairment of Crohn's disease with joint aches, Finding 3, Record at 15; that he did not have an impairment or combination of impairments that met or medically equaled

---

[1] On August 26, 2010, Leonard W. Hunt was substituted for his son William R. Hunt as the plaintiff in this action, William R. Hunt having died on or about July 12, 2010. *See* Docket Nos. 10, 12. For ease of reference, I will refer throughout this decision to William R. Hunt as the "plaintiff."

[2] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on March 15, 2011, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

one of the listed impairments in Appendix 1 to Subpart P, 20 C.F.R. § 404 (the "Listings"), Finding 4, *id*.; that he retained the residual functional capacity ("RFC") to perform less than the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), such that he could lift and/or carry 20 pounds occasionally and 10 pounds frequently, sit for two hours in an eight-hour workday and stand and walk for up to six hours in an eight-hour workday with normal breaks, was limited to no lifting from below the waist, and needed four hours free during the weekday every four to six weeks for Remicade infusion, Finding 5, *id*. at 16;[3] that he was capable of performing past relevant work as a service station attendant, which did not require the performance of work-related activities precluded by his RFC, Finding 6, *id*. at 19; and that he, therefore, was not disabled at any time from September 1, 2007 (his alleged date of onset of disability), through the date of the decision, January 29, 2010, Finding 7, *id*. at 21.[4] The Decision Review Board declined to disturb the decision, *see id*. at 1-3, making it the final determination of the commissioner, 20 C.F.R. § 405.450(a); *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

---

[3] The administrative law judge misspelled "Remicade" as "Remicaid." *See* Record at 412.
[4] The plaintiff was insured for purposes of SSD benefits through September 30, 2011. *See* Finding 1, Record at 14.

The administrative law judge reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520(f), 416.920(f)); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520(f), 416.920(f)); Social Security Ruling 82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 ("SSR 82-62"), at 813.

The plaintiff's statement of errors also implicates Step 3 of the sequential evaluation process, at which step a claimant bears the burden of proving that his or her impairment or combination of impairments meets or equals a listing. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520(d), 416.920(d)); *Dudley v. Secretary of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987). To meet a listing, the claimant's impairment(s) must satisfy all criteria of that listing, including required objective medical findings. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3)). To equal a listing, the claimant's impairment(s) must be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1526(a), 416.926(a)).

## I. Discussion

The plaintiff seeks reversal and remand for further proceedings on the bases that the administrative law judge (i) failed to give controlling weight to the opinion of the plaintiff's treating gastroenterologist, Daniel E. Cassidy, M.D., that, if the plaintiff were suffering from a Crohn's disease flareup, he would need to use the bathroom five to six times during the workday, and that this would occur a few times per year, and (ii) presented an incomplete hypothetical

3

question to a vocational expert present at the plaintiff's hearing, omitting to convey the plaintiff's need for unscheduled bathroom breaks. *See* Plaintiff's Statement of Errors ("Statement of Errors") (Docket No. 18) at [3]-[8].[5] I agree that the administrative law judge committed reversible error in her handling of the question of unscheduled bathroom breaks. Accordingly, I recommend that the court reverse and remand for further proceedings consistent herewith, albeit with respect to the plaintiff's SSD claim only.[6]

The instant appeal turns on the reasonableness of the administrative law judge's interpretation of a December 2, 2009, RFC questionnaire completed by Dr. Cassidy and a letter from Dr. Cassidy dated December 23, 2009, responding to a request for clarification of an opinion expressed therein. *See* Record at 548-52.

The plaintiff was diagnosed with Crohn's disease in 1991, for which he was subsequently treated both with surgery (bowel resections) and varying prescribed regimens of medication. *See, e.g., id*. at 412, 477. He alleged a disability onset date of September 1, 2007. *See, e.g., id*. at 12. Both before and after his alleged onset date of disability, he had multiple flareups of Crohn's disease severe enough to require hospitalization, with a constellation of symptoms that often included diarrhea. *See, e.g., id*. at 228-29, 248, 256, 294-95, 325, 360, 469. Until May 2008, when he began a new treatment of periodic Remicade infusions under Dr. Cassidy's care, he also had a long-standing history of non-compliance with prescribed treatment, routinely

---

[5] Although, in his statement of errors, the plaintiff requested remand with instructions to award benefits, *see* Statement of Errors at [8], his counsel represented at oral argument that he seeks remand for further proceedings.

[6] At oral argument, the plaintiff's counsel acknowledged that no SSI benefits are payable to the plaintiff's father, the plaintiff not having been a "child" during any period of time for which he sought disability benefits. *See Wasilauskis v. Astrue*, Civil No. 08-284-B-W, 2009 WL 861492, at *3 (D. Me. Mar. 30, 2009) (rec. dec., *aff'd* Apr. 21, 2009) (SSI benefits are payable to surviving parents only for periods of time during which "the deceased underpaid recipient was a 'child,'" a child being defined, in relevant part, as "under twenty-two years old and a student regularly attending school or college or training that is designed to prepare the child for a paying job[.]") (citation and internal quotation marks omitted).

ceasing taking his medications when he began feeling well following his discharge from the hospital. *See, e.g., id*. at 250, 256, 294-95, 303-05.

At his December 2, 2009, hearing, the plaintiff acknowledged that his Crohn's disease symptoms had improved on Remicade. *See id*. at 40, 49-50. However, he stated that even since beginning the Remicade infusion regimen, he still was constantly sick to his stomach in the morning and throughout most of the day and had to go to the bathroom anywhere from eight to 12 times a day. *See id*. at 33. He also testified that, since beginning the Remicade infusions, he continued to have bad days, probably three or four days a month, in which he was curled up in bed with stomach pain and unable to do anything. *See id*. at 50-51. He testified that he only went to the hospital as a last resort, when he could not take the pain anymore, but otherwise just stayed in bed avoiding food and water. *See id*. at 51.

> The administrative law judge commented:
>
> You talked about you have to go to the bathroom 12 times a day, up to 12 times a day. Well actually let's talk more about your having to use the bathroom, because I have to be frank with you, I do not see that documented anywhere in your medical records. And that is a problem.

*Id*. at 41. The plaintiff's attorney responded:

> I don't think you're going to find anything in particular in there that says in the doctors['] records I'm going to the bathroom 12 times a day. . . . But when you look at the episodic nature of the exacerbations, even after he started the Remicade in May of '08, he's had up, just in 2009 he's had four trips to the hospital in January, May, August, and September. And if you combine that with the . . . monthly Remicade infusions, that . . . would take him out of work one day a month, I think that rises to a level of unacceptable absenteeism that no employer is going to tolerate.

*Id*. at 42-43. The administrative law judge observed, inaccurately, as discussed below, that the hospitalizations in question were not for Crohn's disease flareups but rather for abdominal

5

symptoms determined to result from esophagitis. *See id*. at 43. She stated, however, that an RFC opinion from Dr. Cassidy would be very helpful. *See id*. at 45-47.

In response to a hypothetical question from the administrative law judge, a vocational expert present at the plaintiff's hearing testified that absences of up to four hours during a month (for Remicade infusions) would be tolerated in the occupation of self-service gas station attendant. *See id*. at 59-60.[7] She indicated, however, that adding either of the following to a hypothetical question positing a sedentary work capacity, with no lifting from below the waist, would rule out that work: (i) absences of four times a month, *see id*. at 61, or (ii) a *daily* need for up to four unscheduled bathroom breaks lasting up to 10 minutes each, *see id*. at 63-64. She also testified that, for purposes of performance of the job of gas station attendant, adding a need for two to three days off for unscheduled hospitalizations approximately twice a year would rule out that work. *See id*. at 67-68.

> Having heard this testimony, the administrative law judge commented:
>
> For me this comes down to since he started Remicade how many times a day does the claimant have [an] urgent need to use the bathroom, not regular bathroom breaks but an urgent [need] to use the bathroom for [Crohn's] Disease related diarrhea. . . . And if he [Dr. Cassidy] could add one more question, during an eight-hour workday. Take that question and put it in during an eight-hour workday. I'll rely on you to relay that to the doctor just for expediency.

*Id*. at 70.

Post-hearing, Dr. Cassidy completed his RFC questionnaire, indicating, *inter alia*, that (i) the plaintiff often would have pain or other symptoms severe enough to interfere with attention and concentration, (ii) he needed a job permitting ready access to a restroom (in checking the answer "Yes" to that question, Dr. Cassidy added an exclamation point), (iii) his

---

[7] The plaintiff testified that he received Remicade infusions every four weeks, that the infusions lasted about two and a half hours, that it took an hour for him to travel to the site of the infusions, and that infusions were not performed on weekends. *See* Record at 32.

6

need to take unscheduled restroom breaks during an eight-hour workday was unpredictable, and he would have essentially no advance notice of that need, (iv) his impairments were likely to produce "good days" and "bad days," and (v) his need to be absent from work as a result of his impairments or treatment was unpredictable. *See id*. at 548-51. Dr. Cassidy added, in relevant part, in his December 23, 2009, clarification note:

> I received a communication regarding some degree of qualification of the comment that rest room breaks would be unpredictable in an 8-hour working day.
>
> With inflammatory bowel disease, this could vary. I would say a reasonable estimate is that if he were to have a flare, he could be going 4 to 6 times during that period of time. With inflammatory bowel disease, there is usually marked urgency associated, meaning the patient has fairly little warning and needs to get to the bathroom facilities within a minute or two. If a flare were present, this difficulty could persist over a period of days to even weeks.
>
> The frequency by which flares would occur is indeed unpredictable and I am not in a position to say whether this would be occurring on a monthly basis or less frequently. I think a guess would be a few times per year, but one would have to appreciate that this is no more than a guess.
>
> \*\*\*
>
> It must be understood that trying to predict a course with these illnesses is fraught with hazard since there is significant variability between patients and indeed within a given patient over time.

*Id*. at 552.

With respect to impairment-related breaks from work, the administrative law judge determined that the plaintiff required only four hours free during the weekday every four to six weeks for Remicade infusion. *See* Finding 5, *id*. at 16. She stated:

> Dr. Cassidy's letter is clear that the [plaintiff] does not currently experience the symptoms of chronic diarrhea by one of his opening statements that, "I would say a reasonable estimate is that <u>if he were to have a flare</u>, he could be going 4-6 times during that period of time" (*emphasis added*). Dr. Cassidy also opined, "<u>I think a guess would be a few times a year, but one would have to appreciate that this is no more than a guess</u>" (*emphasis added*). . . .

7

> Consequently, the undersigned finds that Dr. Cassidy's letter supports a finding that the [plaintiff] has not experienced a difficulty with loose bowels or urgent bathroom episodes during the time period under consideration and especially since starting Remica[de] therapy in May 2008. Dr. Cassidy's opinion and letter are consistent with the treatment notes, and are entitled to great weight in this matter regarding the issue of urgency and bowel movements.

*Id.* at 18 (citations omitted).

The plaintiff argues that the administrative law judge misconstrued Dr. Cassidy's opinion, which was consistent both with the plaintiff's testimony at hearing and with medical record of evidence indicating that, even after beginning Remicade infusion treatment, he had three to four documented flareups with hospitalizations lasting from one to five days. *See* Statement of Errors at [5]-[6]. He adds that the administrative law judge erroneously failed to transmit to the vocational expert a hypothetical question reflecting a need for unscheduled breaks from four to six times per day for bathroom use, at least two to three times per year. *See id.* at [7]-[8].

The administrative law judge supportably viewed the Cassidy RFC opinion and accompanying letter as contradicting the plaintiff's testimony that he needed eight to 12 bathroom breaks *daily* even after initiating Remicade infusion therapy. Nonetheless, as the plaintiff argues, the Cassidy opinion and letter cannot reasonably be construed to support her ultimate finding that the plaintiff had *no need* for unscheduled bathroom breaks. To the contrary, Dr. Cassidy estimated that the plaintiff would have "a few" Crohn's disease-related flareups per year, during which he could be going to the bathroom from four to six times during an eight-hour workday. *See* Record at 552. Those estimates, while couched as guesses because of the unpredictable nature of the disease, *see id.*, were not without basis. Indeed, they were corroborated by Dr. Cassidy's own treatment notes and other evidence of record, including the following:

8

1. Five hospitalizations attributed to Crohn's disease flareups for the period from May 23, 2008, through September 1, 2009, *subsequent* to the commencement of Remicade infusion therapy. *See id.* at 324-25 (hospitalization from May 23 to 25, 2008, for Crohn's disease exacerbation), 452-54 (hospitalization from October 21 to 23, 2008, for possible exacerbation of Crohn's disease, with plaintiff noted on admission to have pain of 10 on a scale of 10 and a lot of loose, watery stools), 461 (hospitalization from January 20 to 22, 2009, for Crohn's disease flare), 465 (hospitalization from May 10 to 14, 2009, for Crohn's disease exacerbation), 473 (hospitalization from August 29, 2009, to September 1, 2009, for Crohn's disease exacerbation).[8]

2. Dr. Cassidy's indication on July 15, 2008, that although the plaintiff stated that he was feeling the best he had in years on the Remicade regimen, he still had some loose stools. *See id.* at 336.

3. Dr. Cassidy's indication on January 9, 2009, that although the plaintiff was doing better than he had since his last bowel resection in the 1990s, he still was concerned that he was "having watery diarrhea with 4 to 6 bowel movements per day[,]" and he had "had a few brief hospitalizations of a few days only for exacerbation[] of his symptoms since starting the Remicade, and this is clearly the best he has done for quite some time." *Id*. at 430.

4. Dr. Cassidy's note of May 28, 2009, that the Remicade infusions had "decreased, but not eliminated [the plaintiff's] exacerbations that have precipitated periodic hospitalizations

---

[8] The plaintiff was hospitalized from September 6 to 11, 2009, for pancreatitis, *see* Record at 481, and was noted upon his discharge from that hospitalization to have developed pain and other symptoms that ultimately were attributed to esophagitis, *see id.* at 428, 434. The administrative law judge determined that neither the pancreatitis nor the esophagitis was a severe impairment, *see id.* at 15, and the plaintiff does not challenge that finding on appeal, *see generally* Statement of Errors. Nonetheless, there is no indication of record from Dr. Cassidy or any other source that any hospitalization prior to September 6, 2009, was wrongly attributed to Crohn's disease instead of pancreatitis or esophagitis.

including 1 of a week ago[,]" *id.* at 412, although a colonoscopy revealed "no evidence of significant active disease on [the plaintiff's] current Remicade regimen[,]" *id.* at 413.

For these reasons, the administrative law judge erred in finding that "Dr. Cassidy's letter supports a finding that the [plaintiff] has not experienced a difficulty with loose bowels or urgent bathroom episodes during the time period under consideration and especially since starting Remica[de] therapy in May 2008[,]" *id.* at 18, and in purporting to give "great weight" to the Cassidy opinion and letter insofar as they touched on the issue of urgency and bowel movements, *see id.*[9]

In turn, her failure to transmit to the vocational expert any need for unscheduled bathroom breaks during an eight-hour workday undermines reliance on that expert's testimony for the proposition that the plaintiff was capable of returning to past relevant work as a self-serve gas station attendant. *See, e.g., Arocho v. Secretary of Health & Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982) (responses of vocational expert are relevant only to extent offered in response to hypotheticals that correspond to medical evidence of record; "To guarantee that correspondence, the Administrative Law Judge must both clarify the outputs (deciding what testimony will be credited and resolving ambiguities), and accurately transmit the clarified output to the expert in the form of assumptions.").[10]

---

[9] To the extent that the plaintiff argues that his testimony that he had "accidents" at work requiring absences, in addition to his need for time off for Remicade infusions and for unscheduled bathroom breaks, demonstrate his inability to sustain full-time employment, *see* Statement of Errors at [7], the Cassidy opinion and letter do not corroborate that he would have accidents at work, *see* Record at 548-52, and the administrative law judge was not required to credit his uncorroborated testimony.

[10] The plaintiff also argues in passing that the weight of the evidence demonstrates that his condition met or equaled Listing 5.06 (pertaining to inflammatory bowel disease) as a result of the presence of multiple periods of bowel obstruction and sustained periods of clinically-documented abdominal pain or cramping that was not completely controlled by medication. *See* Statement of Errors at [7]. This assertion is without merit. Neither bowel obstruction, standing alone, nor documented abdominal pain incompletely controlled by medication, standing alone, meets Listing 5.06. *See* Listing 5.06. The plaintiff fails to explain how his condition "equaled" that listing, *see* Statement of Errors at [7], a conclusion that, in any event, seemingly is beyond the ken of a layperson. The record contains only two medical expert opinions considering whether the plaintiff's condition met or equaled Listing 5.06, *(continued on next page)*

Remand is required for reconsideration of the import of Dr. Cassidy's opinion and the retaking of vocational expert testimony with respect to such limitations as are found on reconsideration.[11] In addition, there is a possible, as yet inadequately developed issue arising from the plaintiff's well-documented non-compliance with prescribed treatment prior to commencing Remicade infusion therapy in May 2008. Insofar as appears, between September 1, 2007, and May 22, 2008, the plaintiff suffered Crohn's-related symptoms, including abdominal pain, cramping, and diarrhea, of even greater severity and frequency than he did after May 23, 2008, *see, e.g., id.* at 463. Yet, assuming *arguendo* that those symptoms were found on remand to have been disabling, the plaintiff nonetheless would not be entitled to benefits to the extent that compliance with prescribed treatment would have restored his ability to work. *See, e.g.,* Social Security Ruling 82-59, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 ("SSR 82-59"), at 793 ("An individual who would otherwise be found to be under a disability, but who fails without justifiable cause to follow treatment prescribed by a treating source which the Social Security Administration (SSA) determines can be expected to restore the individual's ability to work, cannot by virtue of such 'failure' be found to be under a disability.").[12]

---

with both experts concluding that it did not. *See* Record at 321, 349. The administrative law judge's determination that the plaintiff's condition did not meet or equal that listing accordingly is supported by substantial evidence.

[11] The plaintiff's counsel contended for the first time at oral argument that a complete set of hypothetical questions to the vocational expert would posit not only a need for bathroom breaks during Crohn's disease flareups, in accordance with Dr. Cassidy's post-hearing opinion and letter, but also additional flareup symptoms of severe pain, bloating, nausea, anorexia, and fatigue, and a need to miss work one to two times a year for up to two weeks each time as a result of flareups. These arguments were made too late to provide a basis for reversal and remand of the instant decision. *See, e.g., Farrin v. Barnhart,* No. 05-144-P-H, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006) ("Counsel for the plaintiff in this case and the Social Security bar generally are hereby placed on notice that in the future, issues or claims not raised in the itemized statement of errors required by this court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court.") (footnote omitted). Nonetheless, should the court agree that reversal and remand are otherwise required, this decision neither directs nor precludes consideration of these points on remand.

[12] I express no opinion as to whether, if the plaintiff were found disabled during the period prior to May 23, 2008, compliance with prescribed treatment would have restored his ability to work.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED** and the case **REMANDED** for further proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 29th day of March, 2011.

                                             /s/ John H. Rich III  
                                           John H. Rich III  
                                           United States Magistrate Judge